# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-2236

_____

Allied Services, LLC, doing business as Republic Services of Kansas City

*Plaintiff - Appellant*

v.

Smash My Trash, LLC; Smash Franchise Partners, LLC; SMT KC LLC

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: April 14, 2025
Filed: August 21, 2025

_____

Before SMITH, SHEPHERD, and KOBES, Circuit Judges.

_____

SMITH, Circuit Judge.

Allied Services, LLC, d/b/a Republic Services of Kansas City (Republic), appeals the district court's[1] order granting Smash My Trash KC, LLC's (SMT) motion to strike its jury demand because of Republic's failure to present sufficient

---

[1]The Honorable Stephen R. Bough, United States District Judge for the Western District of Missouri.

evidence of monetary damages. Republic also appeals the judgment of the district court in favor of SMT on its claim for trespass to chattels and unjust enrichment. We affirm.

## I. *Background*

Republic operates as a waste hauler across the United States. It filed this lawsuit in the name of its Kansas City Business Unit (KCBU), one of 140 business units it has nationwide. Republic brought the case against SMT and its franchisor, Smash Franchise Partners, LLC (SFP), whose businesses provide mobile waste compaction services to business customers. SMT operates in the Kansas City area, compressing waste in open-top waste containers on a customer's site. Some of SMT's customers are customers of Republic and place their waste in leased containers for haul away.

Republic delivers the containers to its customers, and at regularly scheduled times or upon request, returns to haul away the waste inside the container. Republic owns approximately 1,500 containers in the Kansas City area. SMT compacts or "smashes" waste inside of open-top containers, R. Doc. 414, at 15, using a "Smash Truck," *id*. at 16. SMT directly contracts with Republic's customers and has no business interaction with Republic.

Republic subsequently amended its complaint. The amended complaint alleged eight counts against SMT and SFP for (1) trespass to chattels for SMT depriving Republic of its full use and possession of the containers; (2) conversion of Republic's containers; (3) tortious interference for SMT causing Republic's customers to breach their contracts with Republic; (4) false advertising; (5) civil conspiracy based on the tortious interference claim; (6) a request for declaratory judgment for some of Republic's claims; (7) a breach of sub-bailment; and (8) unjust

enrichment on the basis that Republic has provided a benefit to SMT without payment.[2]

Republic also requested a temporary restraining order (TRO). The request alleged that SMT's compaction damaged its containers and interfered with its customer relationships. The district court denied the TRO motion, concluding that Republic had not demonstrated irreparable harm. It found "that any physical damage to [Republic's] tangible personal property [could] be adequately compensated through an award of damages," R. Doc. 17, at 6 n.4, and that the "alleged harms [were], in essence, a claim for lost profits, an injury that [was] quantifiable as well as compensable via an award of monetary damages," *id*. at 7.

Republic initially limited the scope of its discovery to claims for damages to its KCBU. Just prior to the discovery cutoff, Republic requested leave to expand the scope of discovery beyond Kansas City. Republic alleged that other nonparty SMT franchisees had damaged its containers. Republic based its request on limitations of its own record keeping. It asserted that its records would not enable it to track the location of a container in relation to a particular time, such as where or when it is moved from a customer's location. Its records also could not be used to determine when damage occurred to a container or what caused the damage when discovered. Despite its discovery expansion request, Republic stipulated that it was not seeking damages for harms outside of Kansas City. The district court granted this request for expanded discovery.

During discovery, Republic disavowed monetary damages, acknowledging that it lacked evidence to support them. During SMT's deposition of Republic's Rule

---

[2]Republic's claim for conversion was dismissed at the pleading stage, and the district court granted summary judgment to SMT on the false advertising claim. Neither ruling is challenged on appeal.

30(b)(6) witness,[3] the witness confirmed that Republic had never made any "computation . . . of damages being sought for alleged physical damage to the [containers]." R. Doc. 414, at 46 (internal quotation marks omitted). After the close of discovery, in a reply to a cross-motion for summary judgment, Republic stated: "As Republic has repeatedly made clear, it is not seeking damages for the particular harm to containers caused by 'smashing' in various locations." R. Doc. 273, at 332. Rather, it sought "broader damages," Reply Br. at 11, for "injunctive, declaratory relief, and nominal damages," R. Doc. 279, at 12, related to the "smash[ing] process," R. Doc. 273, at 332 (cleaned up). These broader damages included a $600 rental fee per smash and a $250 penalty per smash as a form of nominal damages.

Prior to trial, SMT filed a motion to strike the jury demand. The district court granted that motion, stating four reasons for its ruling. First, it found that Republic was not entitled to a jury trial because it was not seeking compensatory damages. Republic produced no evidence of monetary damages in accordance with the Federal Rules of Civil Procedure. The court stated:

> First, a jury trial is not warranted because Republic failed to present sufficient evidence of actual monetary damages. The [c]ourt agrees with Defendants that:
>
> > Plaintiff failed to identify, as required under the Federal Rules of Civil Procedure 26 and 33 or Federal Rules of Evidence 701 and 702, any recoverable monetary damages, including any damages arising from its allegations of physical damage to waste containers, lost business, lost customers, or lost revenue. Plaintiff claims it seeks disgorgement of profits received by Defendants, but disgorgement is an equitable remedy. Nor can Plaintiff recover its alleged $600 rental rate, as there is no record basis for this gross figure and it otherwise lacks any expert testimony to support the amount.

---

[3]Fed. R. Civ. P. 30(b)(6) (allowing a party to depose an organization by designating one or more representatives to testify on its behalf).

-4-

> As a result, a jury trial is relatedly not warranted to the extent Republic requests punitive damages.

R. Doc. 390, at 5 (cleaned up). The district court also rejected Republic's argument that it could rely on nominal damages to meet the $20 threshold of the Seventh Amendment. Specifically, the district court reasoned that under Missouri tort law, nominal damages were not available on any of Republic's claims. It stated:

> Second, the [c]ourt agrees with Defendants that "nominal damages are not available on [Republic's] claims under Missouri law." . . . [S]ee, e.g., *Carter v. St. John's Regional Med. Ctr.*, 88 S.W.3d 1, 17 (Mo. Ct. App. 2002) ("Missouri courts have consistently held that pecuniary loss is an essential element of an action sounding in interference with contracts or business expectancy."); *Am. Civil Liberties Union/E. Mo. Fund v. Miller*, 803 S.W.2d 592, 595 (Mo. banc 1991) (recognizing that "unjust" means "a benefit is conferred upon a person" and the person fails to "pay[] its reasonable value") (citations and quotation marks omitted); *Wise v. Sands*, 739 S.W.2d 731, 734 (Mo. Ct. App. 1987) (recognizing that "[s]ince damages are an element of a cause of action for negligence, nominal damages cannot be awarded").

*Id*. at 5–6 (second, third, and fourth alterations in original). Third, the district court held that no jury trial right attached to Republic's request for declaratory or injunctive relief because injunctive relief is "equitable in nature and do[es] not entitle parties to a jury trial" and claims cannot be brought "on the Declaratory Judgment Act alone." *Id*. at 6 (internal quotation marks omitted). Fourth, the court noted that Republic argued that it was entitled to a jury trial in defense of SMT's counterclaims. The argument failed, however, because SMT stipulated to limit its recoverable damages on its counterclaims to $20 specifically to avoid a jury trial.

After striking Republic's demand for a jury trial, the district court held a bench trial. In its findings of fact and conclusions of law, the district court determined that Republic's claims for trespass to chattels, tortious interference, civil conspiracy, and breach of sub-bailment all failed because of the lack of proof of actual damages, an

element of each claim. The court granted judgment to SMT on these claims. The district court also ruled in the alternative that even if damages were not an essential element, judgment should be granted to SMT and SFP. As to SFP, the franchisor to SMT, the court concluded that it had committed no actionable acts against Republic and could not be vicariously liable under Missouri law.

The district court also rejected the claim for unjust enrichment. Missouri law requires the plaintiff to confer an express benefit on the defendant. Republic conferred no express benefit on SMT. Express contracts governed the relationship between Republic and its customers and between those customers and SMT. Lastly, the district court found that Republic failed to mitigate its damages. This appeal followed.

## II. *Discussion*

On appeal, Republic argues that the district court erred in (1) striking its jury demand; (2) granting judgment to SMT on Republic's claim for trespass to chattels; and (3) granting judgment to SMT on Republic's claim for unjust enrichment. Republic thus abandons its other claims.[4]

### A. *Jury Demand*

Republic argues that the district court should not have struck its jury demand because it sought compensatory, nominal, and punitive damages in excess of $20. Republic avers that this entitled it to a trial by jury under the Seventh Amendment on all its claims. Republic contends that it provided evidence that SMT's compaction process damages and degrades the lifespan of the containers.

---

[4]Republic also argues that the district court "provided no notice before making its decision" regarding SMT's motion to strike the jury demand and "allowed Republic no time to respond," thus failing to "afford Republic due process." Appellant's Br. at 28. But this issue was extensively briefed below, and Republic filed a full response to SMT's motion prior to the district court issuing its ruling.

"The Seventh Amendment preserves '[i]n Suits at common law, . . . the right of trial by jury.'" *Ind. Lumbermens Mut. Ins. Co. v. Timberland Pallet & Lumber Co.*, 195 F.3d 368, 374 (8th Cir. 1999) (alteration and ellipsis in original) (quoting U.S. Const. amend. VII). Federal Rule of Civil Procedure 38 also preserves the right to a trial by jury: "The right of trial by jury as declared by the Seventh Amendment to the Constitution—or as provided by a federal statute—is preserved to the parties inviolate." Fed. R. Civ. P. 38(a). However, a court can strike a jury demand if it "finds that . . . there is no federal right to a jury trial." Fed. R. Civ. P. 39(a)(2).

"Suits at common law . . . refer[s] to suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989) (emphasis and internal quotation marks omitted). There is a two-part test to determine whether a remedy is legal or equitable:

> First, we compare the . . . action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature. The second stage of this analysis is more important than the first.

*Id*. at 42 (citation and internal quotation marks omitted). "Whether a party has a right to trial by jury in federal court is a question of law subject to de novo review." *Ind. Lumbermens*, 195 F.3d at 374.

The parties agree that Missouri law controls the underlying claims. Missouri law does not allow for speculative or theoretical damages. "[D]amages can never be presumed . . . ." *Newton Burial Park v. Davis*, 78 S.W.2d 150, 154 (Mo. Ct. App. 1934). "[A]ctual damages are compensation for actual loss or injuries . . . . The pecuniary loss must be determinate and must be proved with reasonable certainty, rather than left to speculation." *Rotermund v. Basic Materials Co.*, 558 S.W.2d 688, 691 (Mo. Ct. App. 1977) (citation omitted). A plaintiff "may not recover for mere expectancies or speculative injuries, but must prove determinable and measurable

damages." *Id*. "Evidence must be adduced to fix the measure of damages." *Grimm v. Sinnett*, 567 S.W.2d 418, 421 (Mo. Ct. App. 1978).

The district court agreed with the defendants that Republic had "failed to identify, as required under the Federal Rules of Civil Procedure 26 and 33 or Federal Rules of Evidence 701 and 702, any recoverable monetary damages, including any damages arising from its allegations of physical damage to waste containers, lost business, lost customers, or lost revenue." R. Doc. 390, at 5 (internal quotation marks omitted). On appeal, Republic avers that it presented evidence prior to trial to prove its claimed damages and require a jury trial. It argues that its evidence would show the following: (1) smashing can cause degradation of the equipment; (2) SMT caused damage to containers owned by other haulers (smashing can cause harm to containers if they have heavier items or do not contain enough waste to properly smash); (3) SMT had conducted more than 3,500 smashes; (4) smashing in a container voids its warranty; and (5) Republic incurs costs for fuel and driver time when waiting for a smash to be completed.

The district court correctly determined that Republic's damages evidence is too speculative or indeterminate. Although it claimed that it had evidence that smashing *can* cause degradation of the containers, it presented no evidence of any actual degradation to its containers in the KCBU. Damage to other containers not owned or operated by Republic did not establish that SMT had caused damage to Republic in Kansas City. Republic produced no evidence that any containers had been harmed by being overweight or by smashes without sufficient waste to properly compact. Republic presented no evidence that any warranty had been voided. Republic also failed to present evidence of extra fuel costs or driver time incurred due to SMT's trash compaction. Republic identified no compensable damages. In addition to the lack of evidence, Republic admitted that it was not seeking actual or compensatory damages. Its alleged damages from the "process" of smashing, Appellant's Br. at 32, do not rise above speculation; Republic simply presented no evidence of actual damages prior to trial.

-8-

Republic alleged damage based on the containers' $600 rental value. The district court agreed with SMT and SFP that this number represented a "gross" revenue that did not include expenses that would produce a net amount. R. Doc. 390, at 5 (internal quotation marks omitted). The district court determined that this valuation would require expert testimony to support it. Republic has not challenged on appeal the district court's finding that expert testimony was required to establish this figure. Nor has Republic contended that the district court erred in deciding that its $600 rental value was a gross figure not allowed by Missouri law. *See, e.g.*, *Ameristar Jet Charter, Inc. v. Dodson Int'l Parts, Inc.*, 155 S.W.3d 50, 57 (Mo. 2005) (en banc) (reversing lost-profits award for failure to present evidence of expenses that should have been deducted); *All Star Amusement, Inc. v. Jones*, 727 S.W.2d 930, 931–32 (Mo. Ct. App. 1987) (per curiam) (reversing damage award for failure to calculate net profit).

Republic also asserted that it suffered $250 damage per container based on the penalty value for customers moving the container under its Customer Service Agreement (CSA) as compensable damages. But this valuation is based on a penalty that the CSA authorizes Republic to charge its customers for moving the container. It would have no such claim for those penalties against a third party such as SMT. Republic did not identify any recoverable compensatory damages below nor before this court. The damages claimed are either speculative, theoretical, or not allowed under Missouri law.

Republic claims that it is entitled to nominal damages, which would support its right to a jury trial. Missouri law, however, does not allow nominal damages "where pecuniary damages are an element of the cause of action." *Tindall v. Holder*, 892 S.W.2d 314, 321 (Mo. Ct. App. 1994). The district court properly ruled that nominal damages were not allowed on any of Republic's claims under Missouri law.

Trespass to chattels has damage or bodily harm as an element. Restatement (Second) of Torts § 218 cmt. e. (Am. L. Inst. 1965) ("The interest of a possessor of a chattel . . . is not given legal protection by an action for nominal damages for

-9-

harmless intermeddlings with the chattel."); *Tubbs v. Delk*, 932 S.W.2d 454, 457 (Mo. Ct. App. 1996) (holding that intermeddling had to be more than harmless to sustain a claim for trespass to chattels). Republic alleged that SMT's compaction process takes control of and dispossesses its containers. Republic claims dispossession allows nominal damages, but dispossession requires the plaintiff to be "deprived of the use of the chattel for a substantial time." Restatement (Second) of Torts § 218(c). And Republic failed to present any evidence of deprivation for a substantial time. As to tortious interference or civil conspiracy, Missouri courts have consistently held that nominal damages are not available on these claims because pecuniary loss is an essential element of the claims. *See Carter v. St. John's Reg'l Med. Ctr.*, 88 S.W.3d 1, 17 (Mo. Ct. App. 2002); *see also Hoops v. Med. Reimbursements of Am., Inc.*, No. 4:16-cv-01543-AGF, 2018 WL 1138464, at *9 n.12 (E.D. Mo. Mar. 2, 2018), *vacated in part on other grounds*, 2018 WL 6830099 (E.D. Mo. Dec. 28, 2018).

As to the claims for unjust enrichment and breach of sub-bailment, even assuming nominal damages are available on these claims, *see A.L. Lab'ys, Inc. v. Philips Roxane, Inc.*, 803 F.2d 378, 383 (8th Cir. 1986) (affirming award of nominal damages on a Missouri unjust enrichment claim); *Fly v. Royal Auto Repair*, 747 S.W.2d 237, 239 (Mo. Ct. App. 1988), and assuming nominal damages are sufficient to support the right to a jury trial, any error in denying a jury trial was harmless because both claims fail as a matter of law, *see United States v. STABL, Inc.*, 800 F.3d 476, 490 (8th Cir. 2015) ("The erroneous denial of a jury trial in a civil case is subject to harmless error analysis." (internal quotation marks omitted)). The breach of sub-bailment claim fails because Republic admitted that it can access its containers any time it wants to, thus failing to establish the necessary bailment relationship in which the bailee could "exclude the possession of anyone else, even the owner" as required under Missouri law. *See Equity Mut. Ins. Co. v. Affiliated Parking, Inc.*, 448 S.W.2d 909, 914 (Mo. Ct. App. 1969). And the unjust enrichment claim fails as a matter of law for the reasons stated *infra* Section II.C.

Finally, Republic is not entitled to a jury trial based on its declaratory judgment request, its equitable claims, or its claim for punitive damages. A claim for declaratory judgment is not a separate cause of action but a remedy for a viable underlying cause of action. *See Reg'l Home Health Care, Inc. v. Becerra*, 19 F.4th 1043, 1044 (8th Cir. 2021). Here, as established above, Republic had no viable cause of action because of the absence of an essential element. *See id.* ("Having abandoned any claim for damages, [Republic] seeks nothing more than a judicial pronouncement that its . . . rights were violated."). As to injunctive relief, it is equitable in nature, and "the Seventh Amendment does not apply in [that] context[]." *City of Monterey v. Del Monte Dunes, Ltd.*, 526 U.S. 687, 719 (1999). Republic's claim for unjust enrichment seeks disgorgement, which is an equitable remedy. *See PFS Distrib. Co. v. Raduechel*, 574 F.3d 580, 597–98 (8th Cir. 2009). Finally, "[p]unitive damages may not be awarded in the absence of nominal or actual damages," *Ellison v. Fry*, 437 S.W.3d 762, 777 (Mo. 2014) (en banc), and thus do not support a jury trial right on their own.

In short, on this record, Republic has not shown entitlement to a jury trial under the Seventh Amendment. Republic's own words disclaimed any request for monetary damages, and it failed to present any actual or admissible evidence that SMT or SFP had caused it any harm or damage. Without a viable legal claim, Republic has no right to a jury trial.

## B. *Trespass to Chattels*

For its second argument, Republic claims that the district court erred in granting judgment against it on its claim for trespass to chattels.[5] We disagree. "After

---

[5]Republic did not allege that SFP committed any direct acts that would lead to liability for trespass to chattels or unjust enrichment. On appeal, Republic does not challenge the district court's conclusion that SFP could not be vicariously liable for these claims against SMT, so to the extent that Republic challenges other aspects of the district court's judgment against it, judgment for SFP is affirmed. *See Jenkins v. Winter*, 540 F.3d 742, 751 (8th Cir. 2008) ("Claims not raised in an opening brief are deemed waived.").

a bench trial, this court reviews legal conclusions de novo and factual findings for clear error." *Urban Hotel Dev. Co. v. President Dev. Grp.*, 535 F.3d 874, 879 (8th Cir. 2008). Trespass to chattels requires proof of (1) intentional dispossession or interference with use of plaintiff's property, (2) without justification, and (3) damage or bodily harm caused thereby. *See Foremost Ins. Co. v. Pub. Serv. Comm'n of Mo.*, 985 S.W.2d 793, 796–797 (Mo. Ct. App. 1998); Restatement (Second) of Torts § 218. Republic's proof did not satisfy these elements.

First, Republic argues that it was dispossessed of the containers. Dispossession must occur "for a substantial time." Restatement (Second) of Torts § 218; *see also Tubbs*, 932 S.W.2d at 457 (holding that no dispossession occurred in part because the chattel was returned within five minutes). It is undisputed that a typical smash job takes approximately 15 minutes, although there was testimony that the occasional job could last up to an hour. The evidence before the district court did not establish that SMT's activities dispossessed Republic for any substantial period of time.

Even assuming Republic's dispossession evidence sufficed, its trespass to chattels claim would still fail because elements two and three are unsatisfied on this record. SMT's compaction activities were authorized by the lessees in possession of the containers. The containers held trash belonging to Republic's lessees, which the lessees could handle as they sought fit. The lessee's contracts did not forbid them from compacting the trash or securing and authorizing others to do so. The lessees contracted with SMT to compact the trash in their containers. SMT's actions were authorized by the lessee who had possession and control of the containers. Under Missouri law, "[c]onduct which is otherwise a trespass may be justified by the fact that the intruder was authorized to do what he did." *Foremost*, 985 S.W.2d at 797. Republic does not dispute that its CSA gives ownership of the waste and possession of the containers to its customers until it is hauled away by Republic. SMT's brief control of the container occurred with the authorization and consent of Republic's customers based on the customer's contract with SMT. Thus, any alleged

dispossession Republic suffered attributable to SMT was authorized and was with justification through SMT's own contract with Republic's customer.

Lastly, a trespass to chattels claim requires proof of damages. Establishing damages required proof that the containers were "impaired as to [their] condition, quality, or value." Restatement (Second) of Torts § 218(b). Republic proved no actual damages. Republic also claims that the trespass caused lost time, but evidence of the quantity and value of that time is required. *See, e.g.*, *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 664 (Tex. 2009) (rejecting a $1,000 damage award when the defendant's breach of contract allegedly caused "wasted time" because "there was no evidence about the value of that time—either the quantity or the cost of it"). Republic presented no evidence of the quantity and value of the time. Republic cites the testimony of two of its drivers that allege that they saw damage to containers caused by SMT. That testimony, however, was not documented nor were the alleged damaged containers made available for inspection under Federal Rule of Civil Procedure 34. The trier of fact determined the weight to be accorded that testimony.

The district court properly granted judgment to SMT and SFP on Republic's claim for trespass to chattels.

C. *Unjust Enrichment*

For its final point on appeal, Republic argues that the district court erred in granting judgment to SMT and SFP on Republic's claim for unjust enrichment. The claim required Republic to prove the following: (1) it directly "conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable and/or unjust circumstances." *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010); *Miller*, 803 S.W.2d at 595 ("An essential element of this tort is a benefit conferred upon the defendant by the plaintiff." (internal quotation marks omitted)). Furthermore, when express contracts dictate the relationship, unjust enrichment cannot apply. *See Turnbull*, 316 S.W.3d at 436 ("[I]f the plaintiff has entered into an express contract for the very

-13-

subject matter for which he seeks recovery, unjust enrichment does not apply, for the plaintiff's rights are limited to the express terms of the contract.").

Express contracts dictate the relationships here, even though the contracts are not directly between SMT and Republic. *See 32nd St. Surgery Ctr., LLC v. Right Choice Managed Care*, 820 F.3d 950, 956–57 (8th Cir. 2016) (rejecting argument that lack of contractual privity allowed recovery for unjust enrichment even when a contract did govern the relationships); *see also Comp & Soft, Inc. v. AT&T Corp.*, 252 S.W.3d 189, 196 (Mo. Ct. App. 2008) ("Despite the absence of privity, the agreements . . . clearly intend to govern the rights and obligations of the parties with respect to payment so as to preclude the inference of an alternate implied contract to support a claim for quantum meruit.").

Here, Republic's CSAs allow it to hold the customer in breach for movement or damage to the container. SMT's contract with the customer states that any damage caused by SMT will be reimbursed. Thus, if Republic wanted to recover for any alleged damage, it could seek to hold its customer in breach, and SMT would ultimately pay for the damage through its agreement with the customer. An implied contract remedy is inappropriate where a contractual remedy is available. *Comp & Soft*, 252 S.W.3d at 196.

Furthermore, Republic has not shown that it directly conferred a benefit on SMT. At best, it provided indirect benefits, as it provided the container to its customers who ultimately provided some benefit to SMT through its contract. In *LifeScience Technologies, LLC v. Mercy Health*, a software developer provided software to a medical facility per its contract that included nondisclosure terms. 632 F. Supp. 3d 949, 953 (E.D. Mo. 2022). The medical facility then breached the contract by providing the software to another software developer, who then used the software to develop its own program, which the medical facility paid for. *Id*. The court held that the unjust enrichment claim against the software developer failed, as "any benefit enjoyed by [the defendant software developer] was conferred by [the medical facility], not [the plaintiff]." *Id*. at 960. Here, the container is similar to the

software in *LifeScience*. Any benefit enjoyed by SMT was conferred by the customers, not Republic.

The district court did not err in granting judgment to SMT on Republic's claim for unjust enrichment, as express contracts governed the dispute and Republic never directly conferred a benefit on SMT.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____